UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

In re:

WAYNE DRAGER, and
CHRISTINE DRAGER,

        Debtors.

CHAPTER 7
CASE NO.: 11-42200 (KCF)

Hearing Date: April 23, 2012

**BRIEF OF H&R BLOCK BANK IN OPPOSITION TO DEBTORS' MOTION
REQUESTING DAMAGES FOR A VIOLATION OF THE AUTOMATIC STAY**

**On the Brief:**
Glenn R. Reiser

LoFaro & Reiser, L.L.P.
55 Hudson Street
Hackensack, New Jersey 07601
(201) 498-0400
Attorneys for H&R Block Bank

**PRELIMINARY STATEMENT**

The Debtors' motion seeks actual damages, punitive damages and an assessment of attorneys' fees against H&R Block Bank ("H&R Block) for an alleged willful violation of the automatic stay premised upon the transmittal of a computer-generated credit card account statement issued post-petition. The Debtors made no attempt to mitigate their alleged damages by notifying H&R Block of the stay violation. Instead, the Debtors overzealously resorted to motion practice - a transparent attempt to profit from H&R Block's inadvertent stay violation – resulting in unnecessarily burdening this Court's docket, and causing H&R Block to incur attorneys' fees that would otherwise have been avoidable had the Debtors taken a more practical and common sense approach.

The Debtors rush to the courthouse steps becomes more obvious by the absence of their submitting a brief as required by D.N.J. LBR 9013-2. The complexity of the issues raised by the motion does not support "a statement that no brief is necessary. . . ." Id. Here, it was incumbent upon the Debtors as the proponent of the motion to provide the Bankruptcy Court with a summary of the relevant and applicable law in the form of a brief. Their failure to do so is not only inexcusable but renders their motion procedurally and substantively defective.

Assuming the Bankruptcy Court is willing to excuse the Debtors' non-compliance with D.N.J. LBR 9013-2, in opposition to the motion H&R Block submits this brief and the Declaration of Michael A. Richards ("Richards Decl.").

Based on this motion record H&R Block respectfully submits that the Court should deny the Debtors' motion in a summary fashion without holding an evidentiary hearing. At most, H&R Block's actions amount to nothing more than a "technical"

violation of the automatic stay committed without knowledge of the bankruptcy filing. The Debtors have not suffered any actual damages, and they would not have incurred any legal fees but for their exercise of poor judgment in racing to the courthouse steps instead of pursuing the less litigious path of issuing a standard stay violation letter to H&R Block.

**FACTUAL STATEMENT**

As set forth in the Richards Decl., H&R Block maintains its corporate headquarters at One H&R Block Way, Kansas City, Missouri 6410.  Richards Decl. at ¶1.  This is the only physical office location for H&R Block.  Id.

H&R Block contends that it did not have proper notice of the Debtor's bankruptcy filing because the notice was mailed to a post office box address intended to receive customer payments only.  In fact, H&R Block did not receive service of the Debtors' motion which was addressed to two post office boxes.  Richards Decl. at ¶11.  The first time H&R Block had actual notice of this bankruptcy filing was on April 3, 2012 when its legal department received a fax of the Debtors' motion pleadings.  Richards Decl. at ¶11, and Exhibit C thereto.

Unaware of the Debtors' bankruptcy filing, in the ordinary course of its business operations H&R Block issued a standard computer-generated billing statement to the Debtor Wayne Drager listing a payment due date of March 16, 2012 on his Emerald Advance Mastercard account for the period of January 17, 2012 to February 17, 2012.  See Exhibit A to Richards Decl.  Emerald Advance account statements are sent automatically each month by one of H&R Block's vendors, TSYS.  Richards Decl. at ¶2.

3

The Debtors did not attempt to notify H&R Block of any stay violation before filing their motion. In fact, the Debtors failed to follow H&R Block's billing dispute procedures clearly noted on the reverse side of the February 2012 billing statement, which instructed as follows:

> **BILLING RIGHTS SUMMARY**
>
> *What To Do If You Think You Find A Mistake On Your Statement*
>
> If you think there is an error on your statement, write to us at:
>
> H&R Block Bank
> Attn: Emerald Advance Disputes
> PO Box 10170
> Kansas City, MO 64171
>
> In your letter, give us the following information:
>
> - *Account information:* Your name and account number.
> - *Dollar amount:* The dollar amount of the suspected error.
> - *Description of Problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.
>
> You must contact us within 60 days after the error appeared on your statement.

See Exhibit B to Richards Decl. In other words, the Debtors could have sent a cease and desist letter to H&R Block, Attn: Emerald Advance Disputes, PO Box 10170, Kansas City, MO 64171.

The Debtors' motion does not set forth a claim of actual damages. To the contrary, the Debtor Wayne Drager summarily claims to have suffered emotion distress from "the overzealous collection efforts" from his creditors. No out-of-pocket losses are alleged by the Debtor, nor could there be simply by the erroneous mailing of a simple credit card monthly billing statement.

# **LEGAL ARGUMENT**

## **POINT I**

### **THE COURT SHOULD NOT IMPOSE SANCTIONS AGAINST H&R BLOCK BECAUSE H&R BLOCK DID NOT COMMIT A WILLFUL VIOLATION OF THE AUTOMATIC STAY**

The Bankruptcy Code states that a debtor injured by the "willful violation" of the automatic stay "shall recover actual damages,[1] including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[2] 11 U.S.C. § 362(k)(1). Moreover, "[w]here willful violation of the stay is demonstrated, compensatory damages

---

[1] Actual damages are "compensatory damages." They are "real, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed to 'nominal' damages and 'punitive' damages." McMillian v. F.D.I.C, 81 F.3d 1041, 1054 (11th Cir. 1996) (quoting BLACK'S LAW DICTIONARY (6th Ed. 1991); Cox v. Billy Pound Motors, Inc. (In re Cox), 214 B.R. 635, 642 (Bankr. N.D. Ala. 1997). "Under §362(k), an award of damages must carry with it sufficient factual foundation." Clark v. Meyers, 2011 Bankr. LEXIS 2531 (Bankr. D.N.J. 2011)(internal citation omitted).

[2] Punitive damages are permitted for a willful violation of the stay "in appropriate circumstances." 11 U.S.C. § 362(k)(1). To determine when appropriate circumstances exist many courts have adopted the standard set forth in the Wagner v. Ivory (In re Wagner) case, 74 B.R. 898 (Bankr. E.D. Pa. 1987):

> Punitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are reserved for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief. To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so.

Wagner, 74 B.R. at 903 (quoting in part Cochetti v. Desmond, 572 F.2d 102, 106 (3rd Cir. 1978).

The Second Circuit Court of Appeals has held that a punitive damage award requires an "additional finding of maliciousness or bad faith on the part of the offending creditor." In re Chateaugay Corp., 920 F.2d 183, 186, n. 1 (2nd Cir. 1990). Other cases have required "an arrogant defiance of the federal law demonstrated." Matter of Mullarkey, 81 B.R. 280, 284 (Bankr. D.N.J. 1987).

are mandatory." In re Hawk, 314 B.R. 312, 318 (Bankr. D.N.J. 2004)(quoting Matter of Mullarkey, 81 B.R. 280, 284 (Bankr. D.N.J. 1987)).

With respect to the concept of "willfulness," the Third Circuit Court of Appeals has held:

> It is a willful violation of the automatic stay when a creditor violates the stay with knowledge that the bankruptcy petition has been filed. *In re University Medical Center, 973 F.2d 1065*, 1087-88 (3d Cir.1992). Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional. *Id.*

In re Lansdale Family Restaurants, Inc., 977 F.2d 826, 829 (3rd Cir.1992); Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 320 n.8 (3rd Cir. 2003)(same). A 'willful violation' does not require a specific intent to violate the automatic stay. Rather the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional." In re Atlantic Bus. and Cmty. Dev. Corp., 901 F.2d 325, 329 (3rd Cir. 1990)(quoting In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989); Clark v. Meyers, 2011 Bankr. LEXIS 2531 (Bankr. D.N.J. 2011).

While a party's knowledge of the filing is "immaterial to a determination of whether the stay was violated," it is relevant to whether the violation was willful. Siskin v. Complete Aircraft Servs., Inc. (In re Siskin), 231 B.R. 514, 517 (Bankr. E.D.N.Y. 1999). This standard is in line with the Third Circuit's requirement that a willful violation of the stay requires knowledge that the case has been filed. In re University Medical Center, 973 F.2d 1067, 1087-88 (3rd Cir. 1992).

6

There is a rebuttable presumption that a properly mailed item is received by the addressee. Hagner v. United States, 285 U.S. 427, 430 (1932). Although a mere denial of receipt is insufficient to rebut the presumption of receipt, In re Hobbs, 141 B.R. 466, 468 (Bankr. N.D. Ga. 1992), "[d]irect testimony of non-receipt, particularly in combination with evidence that standardized procedures are used in processing claims, [is] sufficient to support a finding that the mailing was not received, and thereby rebut the presumption accorded a proper mailing." In re Dodd, 82 B.R. 924, 928 (N.D. Ill. 1987) citing In re Yoder, 758 F.2d 1114, 1118 (6th Cir. 1985).

In the instant case the Debtors claim H&R Block acted willfully by the mere act of issuing a computer generated billing statement to the Debtor Wayne Drager.[3] H&R Block maintains that this billing statement was inadvertently issued as a clerical error because at that time H&R Block lacked actual knowledge of the Debtor's bankruptcy filing.[4] The Debtors could have scheduled H&R Block as a creditor c/o the payment

---

[3] H&R Block asks the Court to take judicial notice that creditors frequently commit "technical" stay violations by inadvertently mailing credit card billing statements to their customers after a bankruptcy case has been filed. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. §201(b); Easy Sportswear, Inc. v. Am. Econ. Ins. Co., 2008 U.S. Dist. LEXIS 51402 (D. Pa. 2008); Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Com., 2005 U.S. Dist. LEXIS 24479 (E.D. Pa. 2005); In re NAHC, Inc. Sec Litig, 306 F.3d 1315 (3rd Cir. 2002) "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d); Easy Sportswear, Inc., 2008 U.S. Dist. LEXIS 514002 (D. Pa 2008) at *2.

[4] Notice of the bankruptcy was sent to H&R Block at a post office box address intended for payment receipts only. This is not where H&R Block maintains its official address. As set forth on its company website, http://www.hrblock.com/company/contact_us.html, H&R Block maintains its corporate world headquarters at One H&R Block Way, Kansas City, MO 64105. Further, the reverse side of the same billing statement that the Debtors base their motion instructed them to send any written payment disputes to a designated H&R Block post office box address. See Exhibit B to Richards Decl.

dispute address appearing on the reverse side of the billing statement.  <u>See</u> Exhibit C to Richards Decl.  Instead, the Debtors listed H&R Block at a post office box address designated exclusively for receipt of customer payments.  Their attorney repeated this mistake in his initial attempt to serve the motion upon H&R Block at the same post office box address.

Under these circumstances, H&R Block respectfully submits that it has sustained its burden of rebutting the presumption that it received proper mailing of the original bankruptcy notice, as well as the Debtors original attempted service of the motion to two post office boxes.  Accordingly, H&R Block's issuance of a standard monthly credit card statement to the Debtor Mr. Drager without having actual knowledge of his bankruptcy filing does not render its conduct "willful".  At most, H&R Block unknowingly committed a technical stay violation which is undeserving of sanctions.  It would wreak absolute havoc on the Bankruptcy Court's docket, and upon the credit industry nationwide, if every debtor who receives an inadvertent monthly credit card billing statement post-petition were given the green light to file a motion alleging a willful stay violation like Mr. Drager has done here.  Surely, such "knee jerk" reactions by debtors looking to score a profit from creditors' inadvertent stay violations is not what Congress intended in enacting Section 362(k).

In fact, several courts have held, based on similar underlying facts, that such actions merely constitute a "technical" violation of the automatic stay and are, thus, not

subject to the former section 362(h)[5] sanctions at least where the act was the product of inadvertent clerical or ministerial oversight. *See, e.g.,* In re Hamrick, 175 B.R. 890, 893-894 (W.D.N.C. 1994) (Court held that a letter sent to the debtor demanding payment was not a "willful" violation of the automatic stay where it resulted from an "innocent clerical error"); In re Atkins, 176 B.R. 998, 1008 (Bankr. D. Minn. 1994) (a "willful" violation requires the creditor to act deliberately with knowledge of the bankruptcy petition; a creditor's negligent omission or forgetfulness is not a willful violation of stay); In re Crispell, 73 B.R. 375, 379 (Bankr. E.D. Mo. 1987) (debits made to debtor's account were made by reason of bank's error in not terminating automatic debit feature and, therefore, not a "willful" violation); *see also* In re Brock Utilities & Grading, Inc., 185 B.R. 719, 720 (Bankr. E.D. N.C. 1995) (IRS's unintentional computer-generated notice of levy did not result in any injury to debtor).

But several other courts have rejected the "technical violation" defense and held that computer-generated errors are willful violations of the stay when a creditor had notice of the bankruptcy status of a debtor. However, in those cases, the creditor took more than a single action in attempting to collect the debt. For example, in In re Price, 42 F.3d 1068, 1071 (7th Cir. 1994), the court held the actions of the IRS in issuing a computer-generated notice of intent to levy were willful because the government was aware of the pending bankruptcy proceedings and, despite the several pleas to halt further collection actions, the government declined to intervene. In In re Matthews, 184

---

[5] Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the provisions included in § 363(k) were found at § 362(h). Therefore, decisions rendered under pre-BAPCPA law refer to § 362(h) rather than § 362(k) when referring to remedies available to a debtor for violations of the automatic stay.

B.R. 594, 598 (Bankr. S.D. Ala. 1995), the court held that a mistake or computer error is not an excuse when the problems continued for two years and there were eight different collection actions taken by IRS within the two-year period).  See also In re Shealy, 90 B.R. 176, 179 (Bankr. W.D.N.C. 1988) (IRS's inaction in restricting computer notices was a reckless disregard of the stay, and therefore, a willful violation); and In re Wingard, 382 B.R. 892 (W.D. Pa. 2008)(Debtor's attorney notified collection agency of a stay violation after client received first dunning letter).

In Wingard, supra, the court specifically remarked about the creditor's continuous conduct in committing stay violations after the creditor's collection agency received written notice from the debtor's attorney informing that the initial dunning letter constituted a stay violation:

> It is true, mistakes do happen. However, after the first dunning letter was sent, Credit Control Collections received a cease and desist letter from counsel to the Wingards. What did Credit Control Collections do with this letter? The answer is send another dunning letter demanding that the debtors "Protect your credit . . . pay in full at once!" This response by Credit Control Collections was inadequate, and as such the Defendants bear the risk of loss with respect to the possibility of bankruptcy notices "falling through the cracks."

382 B.R. at 902.

Most recently, in In re Rodriguez, Case No.: 07-24687 (Bankr. D.N.J., February 22, 2012), the Honorable Michael B. Kaplan sanctioned Countrywide $85,000 for committing multiple actions in willful violation of the automatic stay.  In that case, Countrywide not only billed the debtors for contractual pre-petition arrears but also proceeded to collect these monies post-petition without obtaining stay relief.

H&R Block's conduct does not come remotely close to that of Countrywide in Rodriguez, supra, Even if this Court declines to follow the decisions holding that

10

technical stay violations resulting from an inadvertently sent computer-generated notice are not sanctionable under § 362(k), unlike the creditors in Price, supra, Matthews, supra, Shealy, supra, and Wingard, H&R Block did not commit any additional stay violations once it obtained actual knowledge of the Debtors' bankruptcy filing when it received the faxed motion pleadings on April 3, 2012.  Thus, under these facts the Court should conclude that H&R Block's conduct does not rise to the level of willfulness, and deny the Debtors' motion.

**POINT II**

**THE DEBTORS BREACHED THEIR DUTY TO MITIGATE THEIR ALLEGED DAMAGES, AND OTHERWISE ACTED OVERZEALOUSLY IN PURSUING SANCTIONS THEREBY CREATING UNNECESSARY FEE LITIGATION**

Unlike the debtor's counsel in Wingard, supra, who sent the collection agency a warning letter, here the debtors immediately filed a motion with the Bankruptcy Court after receiving H&R Block's computer-generated billing statement – which at most amounts to a technical stay violation. It is hard to ignore the Debtors' overzealousness behavior.  Instead of choosing the more prudent and common sense approach of providing H&R Block with a simple cease and desist letter (which their attorney could have drafted in two-tenths of an hour), the Debtors chose to magnify the situation by hastily applying for sanctions – in essence attempting to "manufacture" damages when none exist.

Numerous bankruptcy courts have frowned upon the "cottage industry" that has developed with opportunistic debtors and their attorneys looking to profit from inconsequential and technical stay violations. "The policy of section 362(h), to discourage willful violations of the automatic stay, is tempered by a reasonableness

standard born of court's reluctance to foster a 'cottage industry' built around satellite fee litigation." In re Robinson, 228 B.R. 75, 85 (Bankr. E.D. N.Y. 1998), citing Putnam v. Rymes Heating Oils, Inc. (In re Putnam), 167 B.R. 737, 741 (Bankr. D. N.H. 1994). It is well established that "[r]easonable and necessary fees do not include unnecessary litigation costs." Id. See also Yarinsky v. Saratoga Springs Plastic Surgery, PC (In re Saratoga Springs Plastic Surgery, PC), 2005 WL 357207, at *5 n.4 (N.D.N.Y. Feb. 11, 2005), aff'd, 172 Fed. Appx. 339 (2nd Cir. 2006) ("[A]n 'excessively litigious approach' to violations of the automatic stay that do not cause damages in an[d] of themselves must be guarded against.").

In an effort to discourage the overzealous pursuit of automatic stay violations under 11 U.S.C. § 362(k), courts have overwhelmingly held that debtors have an obligation to attempt to mitigate damages prior to seeking court intervention. "Although the Bankruptcy Code does not require a debtor to warn his creditors of existing violations prior to moving for sanctions, the debtor is under a duty to exercise due diligence in protecting and pursuing his rights and in mitigating his damages with regard to such violations." Clayton v. King (In re Clayton), 235 B.R. 801, 811 (Bankr. M.D.N.C. 1998). See also In re Risner, 317 B.R. 830, 840 (Bankr. D. Idaho 2004) ("[I]n determining reasonable damages under § 362(h), the bankruptcy court must examine whether the debtor could have mitigated the damages[.]"); In re Rosa, 313 B.R. 1, 9 (Bankr. D. Mass. 2004) ("Debtors are indeed under a duty to mitigate their damages resulting from automatic stay violations."); Shadduck v. Rodolakis, 221 B.R. 573, 585 (D. Mass. 1998); In re Craine, 206 B.R. 594, 597-98 (Bankr. M.D. Fla. 1997); In re Brock Utilities & Grading, Inc., 185 B.R. 719, 720 (Bankr. E.D.N.C. 1995); McHenry v.

Key Bank (In re McHenry), 179 B.R. 165 (B.A.P. 9th Cir. 1995); In re Esposito, 154 B.R. 1011, 1015 (Bankr. N.D. Ga. 1993) (Debtor has a duty to mitigate damages.). "The automatic stay was not designed to be used as a kind of spring-loaded gun against creditors who wander into traps baited by the debtor." Clayton, 235 B.R. at 807.

In Rosengren v. GMAC Mortgage Corp., 2001 WL 1149478 (D. Minn. Aug. 7, 2001), the court stated:

> [T]he unnecessary escalation of a matter of somewhat limited consequence which could have been resolved by much less lawyering does not make economic or emotional sense. Such escalation creates damages, magnifies costs, and burdens the system. More significantly, such efforts reveal a lack of perspective. . . . [T]he policy of § 362(h) to discourage willful violations of the automatic stay has long been "tempered by a reasonableness standard born of courts' reluctance to foster a 'cottage industry' built around satellite fee litigation."

Id. at *4-5 (citation omitted).

In the instant case the Debtors breached their duty to mitigate damages. Instead they raced to the courthouse steps – an approach that makes no economic or practical sense whatsoever. The end result here is exactly as the court in Rosengren cautioned – "escalation [that] creates damages, magnifies costs, and burdens the system." Id. This Court should see this motion for what it truly represents – satellite fee litigation designed to profit from an inconsequential and technical stay violation that caused absolutely no harm to the Debtors.

**CONCLUSION**

Based on the motion record submitted, and the foregoing reasons and authorities cited, H&R Block respectfully asks this Court to summarily deny the Debtors' motion for sanctions without requiring an evidentiary hearing. The Debtors motion is substantively defective for failure to submit a brief as required by D.N.J. LBR 9013-2. Even if this Court overlooks this glaring deficiency, the Debtors have not met their burden in establishing that H&R Block committed a willful stay violation. At most, H&R Block inadvertently committed a "technical" violation of the stay without having knowledge of the bankruptcy filing.

The Debtors have suffered no actual damages, nor have they attempted to substantiate any such damages. Furthermore, the Debtors failed to mitigate their alleged damages before hastily resorting to motion practice. Had they exercised some restraint, this entire satellite fee litigation would have been avoided.

                        Respectfully submitted,

                        LoFaro & Reiser, L.L.P.
                        Attorneys for H&R Block Bank


                        By: /s/ Glenn R. Reiser_____
                            Glenn R. Reiser

Dated: April 12, 2012